WESTERN INVESTMENTS, INC., Front Royale Apartments, Western Investments d/b/a Front Royale Apartments, Ron Deutsch, Warren Deutsch, and Kate Michon, Petitioners,

v.

Maria URENA, Individually and as Next Friend of L.U., a Minor, Respondent.

No. 03–0919.

Supreme Court of Texas.

Argued Sept. 28, 2004.

Decided April 8, 2005.

Rehearing Denied June 10, 2005.

Evelyn Ailts Derrington, Brock C. Akers, Phillips & Akers, P.C., Houston, for petitioners.

James T. Liston, Francis I. Spagnoletti, Jerry Von Sternberg, Spagnoletti & Co., Houston, for respondent.

Deborah J. Lafetra, Sacramento, CA, for Amicus Curiae Pacific Legal Foundation.

Justice O'Neill delivered the opinion of the Court.

In this case, we decide whether a tenant presented any evidence that the acts or omissions of an apartment complex, its owners, and its manager proximately caused a tenant-on-tenant sexual assault that occurred at the complex. The trial court granted summary judgment for the

defendants on all claims, but the court of appeals reversed and remanded. 122 S.W.3d 249. We hold that the plaintiffs presented no evidence that the defendants' acts or omissions proximately caused the plaintiffs' injuries. Accordingly, we reverse the judgment of the court of appeals and render judgment for the defendants.

## I

Maria Urena and her ten-year-old son, L.U., lived in the Front Royale Apartments in Houston. L.U. has the mental capacity of a four-year-old. One day in November 1999, Urena left L.U. under the care of his aunt, who also lived in the complex. At around 10:00 in the morning, L.U. left his aunt's apartment, unsupervised, to retrieve some toys from his home. On the way back, another Front Royale resident, Michael Zuniga, lured L.U. into his apartment with the promise of a one-dollar bill and sexually assaulted him. L.U.'s aunt discovered the assault immediately, confronted Zuniga, and called the police. Zuniga fled and has never been apprehended.

Urena, individually and on behalf of L.U., sued Western Investments, Front Royale Apartments, Ron Deutsch, and Warren Deutsch, the complex owners; and the complex manager, Kate Michon (collectively, "Front Royale")[1], for negligence, premises liability, breach of contract, breach of implied warranty of habitability, and violations of the Deceptive Trade Practices–Consumer Protection Act. Tex. Bus. & Com. Code §§ 17.41–.63.

The defendants filed joint motions for summary judgment under Texas Rules of Civil Procedure 166a(c) and 166a(i), contending that no act or omission on their part proximately caused L.U.'s injuries. The trial court granted summary judg-

ment in their favor without specifying the grounds and rendered a take-nothing judgment against Urena. Urena appealed the judgment on her negligence and premises-liability claims only. The court of appeals reversed and remanded, holding that genuine issues of material fact existed regarding the foreseeability of the sexual assault and whether Front Royale breached its legal duty to protect Urena and L.U. from the criminal acts of third parties. 122 S.W.3d 249, 257.

Citing a series of violent crimes such as attempted sexual assault, robbery, and murder occurring in and around the Front Royale complex over a two-year period preceding L.U.'s assault, the court of appeals held that these crimes, which were violent and personal in nature, created a fact question as to whether the risk of other violent crimes in the apartment complex was foreseeable. *Id.* at 255. Applying this Court's decision in *Timberwalk Apartments, Partners, Inc. v. Cain,* 972 S.W.2d 749 (Tex.1998), the court of appeals held that summary judgment was improper and a fact issue remained with regard to whether Front Royale owed Urena and her family a legal duty to provide protection from the criminal acts of third parties. *Id.*

The court of appeals also held that the plaintiff presented evidence sufficient to raise a fact issue as to whether Front Royale breached that duty. *Id.* at 256. The court relied on the following evidence to support its conclusion: (1) Front Royale had not replaced its previously terminated security company at the time of the attack; (2) the apartment manager's testimony that she did not request or obtain police reports of calls related to criminal activity in the area as the Texas Apartment Asso-

---

1. The record does not clarify the exact relationship between Western Investments, Front Royale Apartments, Ron Deutsch, and Warren Deutsch.

ciation's "Red Book" recommended; and (3) although various witnesses testified that Front Royale required prospective tenants to provide certain documents such as Social Security cards and drivers licenses, and performed criminal background checks on at least some tenants, these documents were missing from a number of the tenants' files. *Id.*

The defendants argue that Urena failed to present any evidence that Front Royale's acts or omissions proximately caused L.U.'s injuries and therefore the trial court properly granted summary judgment in its favor.

## II

■■■ To succeed in a motion for summary judgment under Rule 166a(c), a movant must establish that there is no genuine issue of material fact so that the movant is entitled to judgment as a matter of law. *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991). In reviewing a summary judgment, we consider the evidence in the light most favorable to the non-movant and resolve any doubt in the non-movant's favor. *Nixon v. Mr. Property Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). Under Rule 166a(i), a party may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. Unless the respondent produces summary judgment evidence raising a genuine issue of material fact, the court must grant the motion. Tex.R. Civ. P. 166a(i); *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 207 (Tex.2002). Because the trial court's order granting summary judgment does not specify the basis for the ruling, we must affirm the trial court's judgment if any of the theories advanced are meritorious. *Rogers v. Ri-*

*cane Enters., Inc.*, 772 S.W.2d 76, 79 (Tex. 1989).

## III

Urena contends she presented evidence that Front Royale proximately caused L.U.'s injuries by failing to provide appropriate security personnel and security measures, failing to implement sufficient security policies and procedures, and failing to warn the other tenants of Zuniga's dangerous tendencies. These failures, Urena claims, constitute negligence in managing the complex as well as a breach of a duty to remedy a premises defect about which Front Royale knew or should have known.

■■■ We analyze Urena's negligence and premises-liability claims together. To prevail on her negligence cause of action, Urena must establish the existence of a duty, a breach of that duty, and damages proximately caused by the breach. *Doe v. Boys Clubs of Greater Dallas, Inc.* 907 S.W.2d 472, 477 (Tex.1995). Premises liability is a special form of negligence where the duty owed to the plaintiff depends upon the status of the plaintiff at the time the incident occurred. *See M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 675 (Tex. 2004); *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 295–96 (Tex.1983). Here, because the Urenas were invitees, the premises liability inquiry focuses on whether Front Royale proximately caused L.U.'s injuries by failing to use ordinary care to reduce or to eliminate an unreasonable risk of harm created by a premises condition that it knew about or should have known about. *See Timberwalk*, 972 S.W.2d at 753.

■■■ Negligence and premises liability, therefore, involve closely related but distinct duty analyses. But we need not delve into this distinction to resolve this case because recovery under either cause

of action is foreclosed in the absence of evidence that Front Royale's acts or omissions proximately caused L.U.'s injuries. Even if we were to assume that Front Royale owed the Urenas a duty[2] to provide security guards, obtain police reports of calls related to criminal activity in the area, and investigate its tenants, as Urena contends, and further assumed that Front Royale breached these duties, there is no evidence that such a breach proximately caused the tragic occurrence here. Proximate cause has two elements: cause in fact and foreseeability. *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex.1992). "These elements cannot be established by mere conjecture, guess, or speculation." *Doe*, 907 S.W.2d at 477. The test for cause in fact is whether the act or omission was a substantial factor in causing the injury without which the harm would not have occurred. *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727 (Tex.2003). If the defendant's negligence merely furnished a condition that made the injuries possible, there can be no cause in fact. *See IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 799 (Tex.2004).

▪ Urena points to three areas in which Front Royale allegedly breached its duty and argues that these breaches caused L.U.'s assault. First, Urena relies on deposition testimony showing that at the time of the assault, Front Royale did not employ a security company to patrol the complex. Urena alleges that had Front Royale provided adequate security, the assault would not have occurred. She presented no evidence, however, that increased security would have prevented this crime. Zuniga was a tenant authorized to be on the property. As such, security guards could not have prevented him from moving freely about the complex and interacting with other residents, nor would security guards have had the ability to monitor the goings-on inside Zuniga's own apartment. Zuniga approached L.U. at 10:00 in the morning, calling L.U. by his name. When Zuniga asked him to come into the apartment he did so, apparently willingly. There was no evidence of a struggle or physical confrontation in the common areas of the complex, nor was there evidence that L.U. raised an outcry that would have been heard outside of Zuniga's apartment once the assault was underway. In sum, nothing transpired that reasonably would have alerted security guards had they been present.

▪ Second, Urena relies on the apartment manager's testimony that she did not obtain police reports of calls related to criminal activity in the area, even though the guide she used in operating the apartments recommended it. But there is no evidence that the police reports would have alerted management that its tenant, Zuniga, was likely to sexually assault a young child. Police reports about criminal

---

**2.** As noted by the amicus curiae, Pacific Legal Foundation, landlord liability for tenant-on-tenant crime poses policy concerns above and beyond those inherent in cases in which tenants sue landlords as a result of third-party criminal actions perpetrated by an intruder. For instance, in order to prevent tenant-on-tenant crime a landlord might have to continuously monitor tenants to determine their propensity for criminal behavior. The amicus argues that such monitoring, in itself, has the potential to invade upon a tenant's rights of privacy. If a landlord discovers a potentially dangerous tenant, the landlord may be required to disclose this information in order to protect other tenants. Such disclosure, claims the amicus, could expose landlords to liability for defamation or other privacy-related torts. In this case we need not decide the existence or scope of a landlord's duty to prevent tenant-on-tenant crime because the plaintiffs presented no evidence that Front Royale's acts or failure to act proximately caused L.U.'s injuries.

activity in the area would have done nothing to alert management that Zuniga was a pedophile, or to suggest that an attack by a pedophile tenant was likely to occur.

■ Third, Urena claims that although Front Royale required certain documents from prospective tenants like Social Security cards, drivers licenses, and criminal-background checks, these documents were missing from a number of tenants' files. But there is no causal connection between this alleged breach of duty and L.U.'s injury. None of the tenants whose files were allegedly incomplete committed the crime here. Furthermore, a background check on Zuniga revealed only driving infractions, nothing that would have alerted a reasonable landlord to the possibility that he posed a danger to others.

Simply stated, Urena presented no evidence that L.U.'s sexual assault could have been prevented if Front Royale had done the three things the plaintiff claims it should have done. Even assuming Front Royale's acts or omissions constituted breach of a duty owed to the Urenas, as they allege, the Urenas presented no evidence that such acts or omissions were a substantial factor in causing L.U.'s injury.

## IV

We reverse the judgment of the court of appeals and render judgment in favor of Front Royale.